IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-02428-RBJ

In Re: DAVID LEON WILDS

    Debtor,

M. STEPHEN PETERS, Chapter 7 Trustee,

    Plaintiff/Appellee,

v.

PRENDERGAST & ASSOCIATES, P.C.,

    Defendant/Appellant.

---

ORDER

---

Prendergast & Associates, P.C. appeals the judgment of the Bankruptcy Court avoiding the transfer to it of $23,826.33 as a preferential transfer. For the reasons discussed below, the judgment is affirmed.

**Facts**

The Prendergast law firm represented David Wilds in a divorce case and, among other things, obtained a judgment on June 18, 2008 in favor of Wilds against his former wife in the amount of $20,417.66 for overpaid child support and interest. Wilds neither collected the judgment nor paid his attorney's fees, which substantially exceeded the amount of the judgment. Finally, around March 2010, Mr. Prendergast called Wilds about the outstanding debt. The two men agreed that Prendergast could collect the judgment, which by then had increased to $23,826.33, and apply it to the debt.

On April 28, 2010 Mr. Prendergast signed a Writ of Garnishment directed to the former wife's bank, listing the judgment creditor as "David L. Wilds c/o Prendergast & Associates, P.C." The divorce court issued the Writ to the bank on April 30, 2010, and on May 11, 2010 the bank responded that it held funds for the judgment debtor in that amount. It did not, however, transfer the funds to Prendergast. On May 20, 2010 Prendergast filed a Notice of Attorney's Lien and Motion to Reduce Attorney's Lien to Judgment with the divorce court, stating that Wilds owed $80,216.26 in fees but had not made any payments. On June 17, 2010 the divorce court granted the Notice and Motion. On July 16, 2010 the divorce court issued a Notice to Garnishee for Payment of Funds into Court Registry and ordered the bank to release the funds to the court. On July 21, 2010 Prendergast received the proceeds of the garnishment. The amount of $23,826.33 was applied to Wilds' balance at the Prendergast firm on that date.

On August 10, 2010 Wilds filed a voluntary petition for bankruptcy relief under Chapter 7. The Trustee subsequently filed a complaint to avoid the transfer of the $23,826.33 to Prendergast, pursuant to 11 U.S.C. § 547, and to recover the transferred funds pursuant to 11 U.S.C. §§ 550 and 551. On August 29, 2012 the bankruptcy court granted summary judgment in favor of the trustee. R. 265-68. The court characterized the agreement between Prendergast and Wilds during the March 2010 telephone conversation as an oral assignment of Wilds' rights in his judgment against his former wife to Prendergast. The court reasoned that the assignment was a secured interest in the nature of a "payment intangible," but that the interest had not been perfected as required by Article 9 of Colorado's Uniform Commercial Code. Therefore, the Trustee could avoid the transfer of the interest to Prendergast as acquired by the oral assignment. Accordingly, the bankruptcy estate stepped into the shoes of the judicial lien creditor and could recover the funds paid to Prendergast by the former wife through the garnishment process.

This appeal followed and has been fully briefed. Oral argument was scheduled for May 31, 2013 but was vacated due to medical issues of counsel for Prendergast. The Court has studied the record, the briefs and the applicable law and determines that it is able to proceed to a decision on the appeal without argument. However, because the losing party lost the opportunity to present oral argument due to counsel's medical unavailability, if Prendergast believes that the Court has erred and that it might be able to persuade the Court through oral argument, it may file a motion for reconsideration and set an argument on that motion.

**Standard of Review**

The district court may not set aside the findings of fact of a bankruptcy judge unless they were "clearly erroneous." Fed. R. Bankr. P. 8013. "A factual finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re TMA Associates, Ltd.*, 160 B.R. 172, 175 (D. Colo. 1993). Conclusions of law are reviewed de novo. *Id*.

**Conclusions**

The parties agree that the bankruptcy court mistakenly based its decision on Article 9 of the U.C.C. I agree. To any extent that Article 9 arguably might have applied, the exceptions set forth at C.R.S. § 4-9-109(d)(2), (d)(7) and (d)(9) would apply. In particular, both parties agree that subsection (d)(9) applies to exclude "[a]n assignment of a right represented by a judgment, other than a judgment taken on a right to payment that was collateral." Prendergast, in arguing that the transfer was the result of an assignment, cites subsection (d)(7), which excludes "[a]n assignment of a single account, payment intangible, or promissory note to an assignee in full or partial satisfaction of a preexisting indebtedness." Because the interest is also a statutory attorney's lien, as discussed below, subsection (d)(2) also excludes it as "[a] lien, other than an

3

agricultural lien, given by statute or other rule of law for services or materials." The inapplicability of Article 9 does not, however, necessarily mean that the bankruptcy court's conclusion was incorrect.

C.R.S. § 12-5-119 "grants an attorney a lien on claims or choses in action . . . on any judgment that the attorney obtained or assisted in obtaining in favor of the client, and on any legal claim filed by the attorney for fees due from the client." *See In re Estate of Benney,* 790 P.2d 319, 322 (Colo. 1990). "The charging lien attaches to all the fruits due a client after a suit is commenced, and it attaches immediately upon the obtaining of the judgment. The lien, as between the attorney and the client is automatic and nothing more need be done to cause the lien to be enforceable against the client." *In re Ranes*, 31 B.R. 70, 72 (Bankr. D. Colo. 1983). Accordingly, Prendergast's interest in the judgment as against Mr. Wilds was established by statute in June 2008 when Wild obtained his judgment against his former wife in the divorce case. For reasons unknown, Prendergast did not take steps to perfect his attorney's lien at that time against third parties.

Because Wilds filed his bankruptcy petition on August 10, 2010, the trustee could avoid any transfer of an interest of the debtor in property that was made "on or within 90 days before the date of the filing of the petition." 11 U.S.C. § 547(b)(4)(A). This means that any transfer on or after May 12, 2010 was avoidable. The question, then, is whether anything that occurred before May 12, 2010 accomplished a transfer of the judgment funds to Prendergast such that the preference rule would not apply.

Under 11 U.S.C. § 547(e)(2), a transfer is made "at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time" or "at the time such transfer is perfected, if such transfer is perfected after such 30

days." In any event, "a transfer is not made until the debtor has acquired rights in the property transferred." § 547(e)(3).

For purposes of § 547(e)(2), the automatic attorney's lien plainly did not accomplish a transfer in June 2008, and Prendergast does not argue otherwise. Instead, Prendergast focuses on two dates when it contends the interest in the judgment was transferred to it: the March "oral assignment" and the May 11 response of the garnishee bank to the writ of garnishment.

Whether one characterizes the telephone conversation between Wilds and Prendergast of March 2010 as an "oral assignment" or simply as an agreement that Prendergast would attempt to collect the judgment and apply the proceeds to the outstanding fee debt is immaterial. No consideration was exchanged for this "assignment," and in any event, Prendergast already had the interest in the judgment that the assignment purported to convey—through its attorney's lien. The "oral assignment" of March 2010, did not accomplish a transfer of interest.

Prendergast also relies on the garnishment proceeding. Prior to the preference period Prendergast had filed a proposed writ of garnishment with the divorce court, which in turn had issued the writ. Upon being served with the writ, the bank had responded on May 11, 2010 that it held funds of the judgment debtor (former wife) in that amount. Prendergast argues that that response by the bank amounted to "possession" of the garnished funds by Prendergast, and therefore, the garnishment was perfected and, I assume, a constructive transfer of the funds, occurred at that time. However, Prendergast cites no authority for the proposition that the bank's response created a transfer of the funds to him that circumvents the preference rule, and I am aware of none.

The facts do not support this proposition either. Before the 90-day period what Prendergast had was an unperfected attorney's lien. Even when the garnishment writ was

obtained the judgment creditor was identified as Mr. Wilds. When Prendergast then filed his notice of attorney's lien and motion to reduce the lien to judgment on May 20, 2010—now within the 90-day period—he still indicated, correctly, that Mr. Wilds had not made any payment on his debt to Prendergast. His filing of those documents followed by the divorce court's granting of his motion to reduce his attorney's lien to judgment perfected his lien claim.

It was only after that had occurred that the divorce court ordered the bank to release the garnished funds. Those funds were transferred to Prendergast on July 21, 2010 and credited to Wilds' account on that date. One might wonder what result one would obtain if the bank had actually transferred the garnished funds on the date when it acknowledged holding them, and if perfection happened on that date and prior to the preference period. However, that did not occur. The bank awaited directions from the divorce court and then transferred the funds.

Instead, the §547(e)(2) "transfer" occurred when the attorney's lien, originating in 2008, was statutorily perfected through Prendergast's filing of notice with the divorce court on May 20. Because the transfer occurred within the 90-day preference period, it was avoidable and was avoided by the Trustee. Accordingly, the bankruptcy court's judgment was correct.

**Order**

The decision of the bankruptcy court is affirmed.

DATED this 3rd day of June, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge